IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| **COMMODITY FUTURES TRADING COMMISSION,** | § § § § § § § § § § § § | |
| Plaintiff, | | CASE NO. 6:08-CV-187 |
| vs. | | |
| **GEORGE D. HUDGINS, individually and dba GEORGE D. HUDGINS, L.L.C.,** | | |
| Defendant. | | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Petition No. 34: Receiver's Petition For Appointment Of Appraisers, Approval Of Appraisals Of Certain Real Property, and Setting Hearing Regarding Approval Of Sale (Docket No. 219), Respondent Silette's Objections to Petition 34 and Motion to Enjoin Sale of Condominium Pending Appeal (Docket No. 221), and Receiver's Response to Silette's Objection and Motion to Enjoin (Docket No. 226). Having considered the parties' written submissions and oral arguments, the Court **OVERRULES** Silette's objection to Petition 34 (Docket No. 221), **DENIES** Silette's motion to enjoin the sale of the condominium pending appeal (Docket No. 221), and **ORDERS** that, pursuant to 28 U.S.C. § 2001(b), the Receiver's sale of the condominium is approved, as described in Petition 34 and pursuant to the terms set forth in the Sales Contract received by the Court (Docket No. 219), but that the closing of such sale **SHALL NOT OCCUR** within the first **THREE DAYS** following the entry of this Order so that Silette will have an opportunity to pursue a stay in the Fifth Circuit Court of Appeals, if she so desires. The Court

1

further **ORDERS** that the Receiver notify Silette if and when the Receiver petitions the Court for distribution of any of the proceeds from the sale of the condominium.

**BACKGROUND**

From at least 2005 until April 2008, George D. Hudgins ran a ponzi scheme where he fraudulently solicited members of the general public to pool together millions of dollars to trade futures contracts and options in violation of federal laws. *See United States v. Hudgins*, 9:08cr27, Information (Docket No. 1); *Commodity Futures Trading Comm'n v. Hudgins*, 6:08cv187 Complaint for Permanent Injunction, Civil Monetary Penalties, and Other Equitable Relief (Docket No. 1). Hudgins pled guilty and was sentenced to 121 months. *See United States v. Hudgins*, 9:08cr27, Judgment (Docket No. 26).

The Commodity Futures Trading Commission ("CFTC") brought this action to permanently enjoin Hudgins's fraudulent activities, seek civil monetary penalties, and for other equitable relief. The Court appointed a Receiver to collect, receive, and take custody, control, and possession of Hudgins's assets. *See CFTC v. Hudgins*, 6:08cv187, Consent Order of Preliminary Injunction and Other Equitable Relief (Docket No. 26). The Court then entered subsequent orders governing the administration of the Receivership (Docket No. 42) and establishing a claims adjudication process (Docket No. 43). The CFTC and Hudgins resolved their dispute and jointly moved the Court to enter a proposed permanent injunction, civil monetary penalty, and other equitable relief (Docket No. 154). The Court granted the agreed relief, but did not terminate the Receivership (Docket No. 161). The Receivership was continued in order to pursue recovery of monies for distribution to Hudgins's victims.

During the course of his fraud, Hudgins gave cash and tangible gifts—from money he

acquired through his ponzi scheme—to friends and family. One of those friends was Wendy Silette, a single woman residing in Florida who Hudgins met in October 2007 through an online dating service. So that Silette could pay off her debts and be free to travel with him, Hudgins wired her $362,500 on January 15, 2008 and sent her a $6,000 check on March 20, 2008. Silette subsequently used $328,034.41 of these funds to pay off the mortgage lien on her Naples, Florida condominium ("the condominium").

The Receiver obtained an appraisal for the condominium in September 2008 which reflected an appraised value of $260,000. In December 2008, the Receiver sought an order directing Silette to turn over the condominium to the Receivership (Docket No. 109). Silette refused to voluntarily turn over the condominium, claiming the condominium was protected by Florida's homestead exemption act. While there were no allegations Silette was in any way involved in or knew of Hudgins's ponzi scheme, there was no dispute that the funds she received and used to pay off the mortgage were obtained through Hudgins's ponzi scheme. After holding a hearing on the matter in June 2009, the Court found that "[d]espite [Silette's] innocence in the fraud, to allow her a homestead exemption would allow her to become unjustly enriched by the ponzi scheme at the expense of Hudgins's victims." *CFTC v. Hudgins*, 620 F. Supp. 2d. 790, 794 (E.D. Tex. 2009). The Court imposed an equitable lien on the condominium and ordered Silette to turn it over to the Receiver. *Id*. at 795. The Receiver assumed possession of the condominium on July 6, 2009. Silette has appealed the Court's ruling (Docket No. 185), and the Fifth Circuit has expedited the appeal (Docket No. 221-3).

The Receiver now seeks an order approving the sale of the condominium for $175,000 (Docket No. 219). Three Court appointed appraisers value the condominium at $215,000, $210,000,

and $190,000, resulting in an average appraised value of $205,000. The Receiver received an offer to purchase the condominium for $175,000, which the Receiver accepted, subject to the Court's approval. This is the only offer received that exceeds two-thirds of the appraised value of the condominium. The Court ordered that it would hear arguments, objections, or additional qualifying offers, as defined by 28 U.S.C. § 2001(b), regarding the confirmation of the sale of the condominium on October 26, 2009 (Docket No. 220). On October 16, 2009, Silette filed an objection to Petition 34, along with a motion to enjoin the sale of the condominium pending appeal pursuant to Federal Rule of Appellate Procedure 8 (Docket No. 221). The Receiver filed his response to Silette's objection and motion to enjoin the sale pending appeal on October 26, 2009 (Docket No. 226). The Court held a hearing on October 26, 2009 regarding the confirmation of the sale of the condominium and the motion to enjoin the sale pending appeal.

## APPLICABLE LAW

A district court must consider four factors in determining whether to grant a stay pending appeal under Federal Rule of Civil Procedure 62 or Federal Rule of Appellate Procedure 8: (1) whether the movant has made a showing of likelihood of success on the merits; (2) whether the movant has made a showing of irreparable injury if the stay is not granted; (3) whether the granting of the stay will substantially harm the other parties; and (4) whether the granting of the stay serves the public interest. *Wildmon v. Berwick Universal Pictures*, 983 F.2d 21, 23 (5th Cir. 1992); *United States v. Baylor Univ. Med. Ctr.*, 711 F.2d 38, 39 (5th Cir. 1983); *Drummond v. Fulton County Dep't of Family & Children's Serv.*, 532 F.2d 1001, 1002 (5th Cir. 1976), *rev'd on other grounds*, 547 F.2d 835 (5th Cir. 1977). However, the Fifth Circuit "has refused to apply these factors in a rigid, mechanical fashion." *Baylor*, 711 F.2d. at 39 (citing *Ruiz v. Estelle*, 650 F.2d 555 (5th Cir. 1981)).

In *Ruiz v. Estelle*, the Fifth Circuit held that the movant "need only present a substantial case on the merits when a *serious legal question* is involved *and* show that the *balance of equities* weighs heavily in favor of granting the stay." 650 F.2d at 565 (emphasis added).

A serious legal question exists where there are legal issues having far-reaching effects, involving significant public concerns, or having a broad impact on federal/state relations. *See Wildmon*, 983 F.2d at 23–24; *Baylor*, 711 F.2d at 40; *City of El Paso v. El Paso Entm't, Inc.*, No. 07-CV-00380-KC, 2009 WL 2143922, at *2 (W.D. Tex. July 8, 2009). The Fifth Circuit has made clear that even if a serious legal question is involved, "the presentation of a substantial case is only the threshold requirement." *Wildmon*, 983 F.2d at 23. Another necessary consideration is whether the balance of the equities—consideration of the other three factors—favors granting the stay. *See Ruiz*, 650 F.3d at 565–566; *El Paso*, 2009 WL 2143922, at *2. Thus, if a serious legal question is involved, a movant may satisfy the first factor by showing only a substantial case on the merits, rather than having to show a likelihood of success on the merits. *See Ruiz*, 650 F.3d at 565–566; *Wildmon*, 983 F.2d at 23–24; *El Paso*, 2009 WL 2143922, at *2. However, regardless of the movant's method of establishing the first factor, the remaining three factors must also be considered. *Id*.

## ANALYSIS

To satisfy the first factor, Silette must either make a showing of likelihood of success on the merits or present a substantial case on the merits involving a serious legal question. Having previously ruled against Silette in this matter, the Court believes that Silette has a very low likelihood of success on the merits. The Court carefully considered and addressed the merits of Silette's arguments regarding the Florida homestead protections in its June 3, 2009 Memorandum

Opinion and Order. *CFTC v. Hudgins*, 620 F. Supp. 2d. 790 (E.D. Tex. 2009). Silette has failed to rebut the findings and analysis in the Court's opinion, and has failed to make a strong showing of likelihood of success on the merits.[1] Thus, in order to satisfy the first factor, Silette must present a substantial case on the merits involving a serious legal question.

Assuming, for the sake of argument, Silette has presented a substantial case on the merits, it does not appear that a serious legal question is involved in this case. Silette contends that the serious legal question involved is "whether Florida's homestead protections prevent the receiver from seizing [Silette's] condo"(Docket No. 221). In support of her argument, Silette argues that the determination of this question could have a broad impact on relations between creditors, debtors, and innocent parties harmed by fraud. The Receiver argues that this case presents a very narrow issue that involves only one person, Silette, who applied funds received from a ponzi scheme to pay off her mortgage, then claimed that the Florida homestead exemption protected those funds because they were used to purchase her homestead.

In *United States v. Baylor University Medical Center*, the dispute centered around whether Baylor University Medical Center ("Baylor Medical Center") was obligated to comply with the Rehabilitation Act of 1973 by virtue of it receiving Medicare and Medicaid reimbursement payments. 711 F.2d 38, 39 (5th Cir. 1983). In *Baylor*, the district court held that Baylor Medical

---

[1] At the hearing on October 26, 2009, Silette cited to *United States v. Lee*, where the Seventh Circuit held that Florida law prohibited the forfeiture of a homestead, which had not been connected to any criminal activity, to satisfy the husband's forfeiture amount because husband and wife were tenants by the entirety. 232 F.3d 556, 560 (7th Cir. 2000). Silette argued that *Lee* was analogous to this case because the Seventh Circuit analyzed the case as if the United States was a judgment creditor. The Receiver responded that the Receiver in this case is not a judgment creditor, but this is an *in rem* proceeding to trace and recover the proceeds of the illegal ponzi scheme. The Receiver is correct. *Lee* is inapposite and does not support Silette's argument for likelihood of success on the merits.

Center's receipt of Medicare and Medicaid funds constituted federal financial assistance and ordered Baylor Medical Center to immediately allow the United States Department of Health & Human Services to investigate its operations or risk losing its Medicaid and Medicare funds. *Id*. The district court denied Baylor Medical Center's motion for a stay pending appeal, so Baylor Medical Center moved for the same relief at the Fifth Circuit. *Id*. The Fifth Circuit found that a serious legal question was involved, namely, "[w]hether Medicare and Medicaid payments constitute federal financial assistance within the meaning of the Rehabilitation Act." *Id*. at 40. The Fifth Circuit concluded that this serious legal question "could have a broad impact upon federal/state relations" and "would have a substantial effect on the recipients of [Medicare and Medicaid] services." *Id*.

In *Wildmon v. Berwick Universal Pictures*, the Fifth Circuit distinguished the facts in *Baylor* and found that no serious legal question was present where the case involved only a private contractual matter. 983 F.2d 21, 24 (5th Cir. 1992). In *Wildmon*, the interpretation of the contract was "of no concern to others," and "the results of th[e] dispute ha[d] no far-reaching effects or public concerns to anyone—unlike those at issue in *Baylor*." *Id.* As in *Wildmon*, where the matter was of no concern to others, whether Florida's homestead protections prevent the Receiver from seizing Silette's condominium is of concern only to Silette. *Id.* Unlike the situation in *Baylor*, the resolution of this dispute will not have far-reaching effects, does not involve significant public concerns, and will not have a broad impact on federal/state relations. *Baylor*, 711 F.2d at 40*; see also Wildmon*, 983 F.2d at 23–24; *El Paso*, 2009 WL 2143922, at *2. Accordingly, Silette has failed to establish that a serious legal question is involved and has failed to meet the first factor.

For the second and third factors, the Court must balance the harms—Silette must show that she will be irreparably harmed if the stay is not granted and the Court must determine whether

7

granting of the stay will substantially harm the other parties involved. Silette argues that she will forever lose her right to possess and enjoy her unique homestead if the Court denies the stay and approves the sale. Silette argues that a victory on appeal would be meaningless if the condominium has already been sold as she will be unable to reclaim her homestead. As an alternative request for relief, Silette requests that the Court enjoin the Receiver from distributing the proceeds from the sale and order that the proceeds be deposited into an escrow account or into the Court's registry pending Silette's appeal. However, once the Court approves the sale, the proceeds are deposited into the Receivership bank account where they can only be distributed with express authorization from the Court (Docket No. 43). Thus, the Court need not enjoin the Receiver from distributing the proceeds from the sale as the proceeds are already subject to the Court's supervision. Although approval of the sale and denial of the stay would cause Silette to lose any right to recover the condominium itself, she will still be able to pursue recovery of the proceeds from the sale of the condominium, should she prevail on appeal.

Conversely, if the Court grants the stay, the purchaser of the condominium will likely terminate the existing Sales Contract and the earnest money will be lost.[2] The value of the condominium has dropped 21% since it was first appraised in September 2008. The Receiver cannot estimate how long it will take to find another purchaser for as much as the agreed upon sales price of $175,000. Moreover, if the sale were stayed, the Receiver would continue to possess and have to pay expenses related to ownership of the condominium—approximately $2,109.00 per quarter.

---

[2] The Sales Contract provides that "The Buyer has the following option if the Approval Order and the sale of the property is stayed: the Buyer may terminate th[e] Contract and receive a full refund of the Buyer's earnest money if the stay is not terminated within seven (7) days after the date the Approval Order was entered." Docket No. 219-2.

Any losses incurred by the Receiver are ultimately incurred by Hudgins's defrauded investors. While the Court realizes that Silette may suffer some harm should she prevail on appeal, the Court finds this harm is significantly outweighed by the harm Hudgins's victims will suffer if the sale is lost.

Finally, the Court must consider whether the granting of the stay serves the public interest. Silette argues that it is in the public's interest to ensure that Hudgins does not claim another victim, to ensure the Receiver's seizure of the condominium comports with the law, and to ensure that there is proper legal oversight of government efforts to dispossess citizens of their property. Silette again attempts to broaden the issue. The Receiver is an agent of the Court, representing the interests of Hudgins's creditors, not a government agent or official. The Receiver argues that the public interest is more precisely served by refusing to allow someone to profit from fraud than by granting the stay. The Court believes that the public interest served by denying the stay outweighs any public interest served by granting the stay. Thus, Silette has failed to satisfy the fourth factor.

## CONCLUSION

Silette has failed to show a strong likelihood of success on the merits and has failed to show that a substantial legal question is involved. Further, the balance of equities does not weigh heavily in favor of granting the stay. Accordingly, the Court **OVERRULES** Silette's objection to Petition 34 (Docket No. 221), and **DENIES** Silette's motion to enjoin the sale of the condominium pending appeal (Docket No. 221).

In addition, after considering the pleadings, evidence, and arguments and noting that no additional bona fide offers for the condominium have been received, the Court finds that the best interests of the Receivership estate are served by confirming the sale as described in Petition 34.

Accordingly, the Court finds that the Receiver has complied with the provisions of 28 U.S.C. § 2001(b). The Court **ORDERS** that, pursuant to 28 U.S.C. § 2001(b), the Receiver's sale of the condominium is approved, as described in Petition 34 and pursuant to the terms set forth in the Sales Contract received by the Court (Docket No. 219). However, the closing of such sale **SHALL NOT OCCUR** within the first **THREE DAYS** following the entry of this Order so that Silette will have an opportunity to pursue a stay in the Fifth Circuit Court of Appeals, if she so desires.

The Court further **ORDERS** that the Receiver notify Silette if and when the Receiver petitions the Court for distribution of any of the proceeds from the sale of the condominium.

**So ORDERED and SIGNED this 2nd day of November, 2009.**

_____
**LEONARD DAVIS
UNITED STATES DISTRICT JUDGE**